**NOT FOR PUBLICATION**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

CHERYL ERHART,                          :
                                        :        Civil Action No. 00-6209
               Plaintiff,               :
                                        :
       v.                               :                **OPINION**
                                        :
CITY OF ATLANTIC CITY,                  :
                                        :
               Defendant.               :

**Appearances:**

> Richard L. Press, Esquire
> Press & Taglialatella, LLC
> 23 East Black Horse Pike
> Pleasantville, New Jersey 08232
>         Attorney for Plaintiff

> Kimberly A. Baldwin, Esquire
> City of Atlantic City
> Department of Law
> City Hall–Room 707
> 1301 Bacharach Boulevard
> Atlantic City, New Jersey 08401
>         Attorney for Defendant

**RODRIGUEZ, Senior United States District Judge.**

This matter comes before the Court on Plaintiff Cheryl Erhart's Motion for

Additur, or in the alternative, a New Trial [Docket No. 128] and on Plaintiff's application

for attorney's fees and costs [Docket No. 128].  For the reasons set forth below,

Plaintiff's Motion for Additur or, in the alternative, a New Trial will be denied and

1

Plaintiff's application for attorneys' fees and costs will be granted in part and denied in part.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Both the parties and the Court are intimately familiar with the facts and procedural history of this case.  The facts will be repeated here only to the extent they are pertinent to the analysis.

In November of 2000, Plaintiff filed suit against Defendant,[1] City of Atlantic City, alleging state and federal claims of reverse-race discrimination, retaliation, and hostile work environment during her tenure as Acting Chief of Code Enforcement.  On June 26, 2003, this Court granted in part and denied in part Defendants' Motion for Summary Judgment.  As against Defendant, the claims of reverse-race discrimination and hostile work environment under the New Jersey Law Against Discrimination ("NJLAD") and Title VII survived summary judgment.  As against Andrew Mair, the claim of retaliation survived.

The first trial commenced on September 13, 2004.  On October 12, 2004, the jury found in favor of Mair but returned a split verdict as to Defendant.  The jury found against Defendant on the NJLAD removal and the hostile work environment claims, but

---

[1]Plaintiff also named the following individuals in her Complaint: James Whelan, Mayor of the City of Atlantic City; Andrew Mair, Business Administrator for the City of Atlantic City; and Gary Alston, Chief of Administrative Services for the City of Atlantic City.  Whelan and Alston were dismissed from the suit on June 26, 2003.

held in favor of Defendant on the Title VII removal claim.  The jury returned a general damages of $208,800.00 against Defendant.  On October 14, 2002, the Court held a punitive damages trial and the jury awarded $500,000.00 against Defendant.  Following the submission of post-trial motions, the Court found that the jury's verdict as to removal was inconsistent but that the verdict as to hostile work environment was sound; however, because it was impossible to evaluate the propriety of the compensatory and punitive awards in light of the inconsistencies, the Court granted Defendant's motion for new trial as to damages only.

On March 13, 2006, a re-trial as to damages only commenced.  On March 22, 2006, the jury returned a compensatory damages award in favor of Plaintiff in the amount of $50,000.00.  With regard to punitive damages, the jury awarded nothing.  Following the verdict, Plaintiff submitted a post-trial motion and fee application.

## DISCUSSION

Plaintiff argues that she is entitled to an additur or, in the alternative, a new trial on the issue of both emotional distress and punitive damages.  Plaintiff also argues that the Defendant should not be awarded fees and costs.  In addition, Plaintiff filed an application for fees and costs.  Each of these will be addressed in turn.

A.      **Motion for Additur or, in the Alternative, a New Trial**

As an initial matter, the Court finds it incomprehensible that neither party felt it necessary to cite to the trial transcripts given the fact that Plaintiff's motion rests, at least

in part, on the sufficiency of the testimony.  Nevertheless, the Court will respond to the

Motion.

**1.     A full review of this case**

With respect to Plaintiff's request "for a full review of what has happened in this

case and a reconsideration of the judgment, notwithstanding the verdict," (Pl. Br., p. 7),

the Court understands that Plaintiff seeks to have this Court reconsider its Order of

October 2, 2005, or, in the alternative, grant a new trial because "the trial court threw out

case #1 entirely without mention of the agreements set by counsel and the court as to

question #1 and 2," (Pl. Br., pp. 5-6).  First, any time to file a motion for reconsideration

pursuant to Local Civ. R. 7.1(i) has expired.  Rule 7.1 states, in pertinent part, that:

> A motion for reconsideration shall be served and filed within 10
> business days after the entry of the order or judgment on the original motion
> by the Judge . . . .

Local Civ. R. 7.1(i) (2005).

Second, the law of the case doctrine "limits the extent to which an issue will be

reconsidered once the court has made a ruling on it."  Fagan v. City of Vineland, 22 F.3d

1283, 1290 (3d Cir. 1994).  Although courts maintain the authority to revisit prior

decisions if extraordinary circumstances are presented which expose the prior decision as

"clearly erroneous" or suggest that it would "work a manifest injustice," Plaintiff has

presented nothing from which this Court could hold its prior decision was clearly

erroneous or manifestly injust.  Lambert v. Blackwell, 387 F.3d 210, 237 (3d Cir. 2004)

(citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988)); see also

Pub. Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc., 123 F.3d

111, 116 (3d Cir. 1997) (holding that the law of the case doctrine does not limit a federal

court's power, rather it directs its exercise of discretion).  Therefore, Plaintiff is not

entitled to relief based on a "review of what has happened in this case."  Accordingly, her

motion will be denied on this ground.

    2.    **Emotional distress**

Plaintiff argues that she is entitled to an additur or, in the alternative, a new trial

with respect to her emotional distress claim for several reasons.  First, she argues that

there was "uncontroverted" testimony that she was subjected to a hostile work

environment during her twenty-month tenure in the Code Enforcement Office.  It appears

that Plaintiff submits that she is entitled to an additur of at least eight months of her salary

because she was awarded $50,000.00, which was only one year of her salary.  Plaintiff's

argument assumes that the jury's award of $50,000.00 bears some relation to her salary, a

proposition for which there is absolutely no factual basis.  Moreover, Plaintiff's argument

belies the testimony presented at trial.  For example, Plaintiff's husband was impeached

with prior testimony, which indicated that during the last eight months of her tenure

(approximately), she "thought [Code Enforcement] was a great place–greatest place in the

world."  (Trial Tr., 3/20/2006, p. 43:19-44:2.)  The jury could have excluded this time

based on the testimony and credibility of the witnesses.

Second, Plaintiff argues that she offered "uncontroverted" evidence that she was accompanied by David Snyder during the day and evening for protection.  However, Plaintiff fails to establish a link between her need for security and the hostile work environment.  The jury could have easily assumed that, as Defendant argued, the need for protection was merely a result of the nature of Plaintiff's job.

Third, Plaintiff argues that she was sued on two occasions and faced potential lawsuits exposing her to compensatory and punitive damages.  Moreover, Plaintiff argues that it is "uncontroverted" that the punitive damages would not be covered by the city.  However, on cross-examination, Plaintiff testified that when she was sued, "the city defended [her], never asked [her] to pay any cost to defend, never asked [her] to contribute any money to a settlement, and never had any personal contribution from [her] other than just [her] help as a witness."  (Trial Tr., 3/15/2006, p. 131:1-5.)  There was sufficient evidence for the jury to have determined that Plaintiff's fear was unreasonable and, therefore, not compensable.

Therefore, Plaintiff is entitled to neither an additur nor a new trial with respect to emotional distress damages.  Accordingly, her motion will be denied on this ground.

**3.      Punitive damages**

Plaintiff argues that she is entitled to an additur or, in the alternative, a new trial with respect to her punitive damages claim for several reasons.  First, Plaintiff argues "that the overwhelming weight of the evidence warrants an award of punitive damages."

6

(Pl. Br., p. 7.)  In the absence of any cites to said overwhelming evidence, and given the inconsistencies cited above, the Court does not find this argument persuasive.

Second, Plaintiff argues that the jury performed an act of jury nullification by finding zero punitive damages.  This argument is based on the fact that the jury awarded zero punitive damages after submitting the following question: "[i]s it possible to award punitive damages to a third party instead of the plaintiff, i.e., (sic) a housing grant or code training program, (sic) etc.?"  As agreed by the parties, the Court advised the jury that it could not award punitive damages to a third party.  Plaintiff submits that it was "uncontroverted" that "[t]here was no evidence establishing that the conduct was not directed toward (sic) [P]laintiff by Mayor Whelan, that she was specifically directed on numerous occasions to make employment decisions both as to hiring and discipline on the basis of race and that on a day in and day out basis residents of the City were exposed to five (5) individuals who had no abilities as Code Enforcement Officers or as Field Representatives after their title was changed."  (Pl. Br., p. 8.)

However, the jury was instructed that punitive damages required consideration of the "reprehensibility or outrageousness of [Defendant's] conduct."  It also required that the conduct be "especially egregious."  Finally, the jury was instructed that "punitive damages are warranted if it has been shown that [Defendant's] acted with malice or reckless indifference to [Plaintiff's] federally protected rights."  Moreover, Plaintiff ignores the fact that her witnesses were impeached time and time again.

It is axiomatic that credibility determinations are within the province of the jury.

In addition, it was for the jury to determine whether Defendant's conduct was

reprehensible, outrageous, especially egregious or malicious or recklessly indifferent

toward Plaintiff's federally protected rights.  Because Plaintiff at all times had the burden

of proof, the jury simply may not have believed Plaintiff's testimony.  Therefore, Plaintiff

is entitled to neither an additur nor a new trial with respect to punitive damages.

Accordingly, her motion will be denied on this ground.

**B.      City's Entitlement to Counsel Fees and Costs**

This issue cannot be decided until Plaintiff's fee application has been decided and

Defendant has had an opportunity to brief the issue for the Court.  Therefore, Plaintiff

will have an opportunity to renew her objections at such time that the issue is properly

before the Court.

**C.      Plaintiff's Motion for Fees and Costs**

Plaintiff moves against Defendant for $319,223.25 in fees and $22,255.78 in costs.

Defendant argues that: (1) Plaintiff is not a prevailing party; (2) Plaintiff's hourly rate is

not the prevailing market rate; (3) Plaintiff's travel time should not be billed at the full

rate; and (4) Plaintiff's time records are vague and inaccurate.

**1.      Standard**

To calculate an attorney fee award, the Court must determine a lodestar, that is

"the number of hours reasonably expended on the litigation multiplied by a reasonable

hourly rate." Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990) (quoting Hensley

v. Eckerhart, 461 U.S. 424, 433 (1983)).  In determining the lodestar, the Court must

"decide whether the hours set out were reasonably expended for each of the particular

purposes described and then exclude those that are 'excessive, redundant, or otherwise

unnecessary." Interfaith Cmty. Org. v. Honeywell Intern., Inc., 426 F.3d 694, 711 (3d

Cir. 2005) (further citation omitted).  Hours not generally billed to one's own client are

properly excluded from a fee award against an adversary.  Pub. Interest Research Group

of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995).

The party moving for fees bears the burden of establishing the "reasonableness" of

the hourly rate and number of hours expended via specific evidence supporting the hours

and rates claimed.  Hensley, 461 U.S. at 433; Washington v. Philadelphia County Ct. of

Comm. Pl., 89 F.3d 1031, 1035 (3d Cir. 1996) (citing Blum v. Stenson, 465 U.S. 886,

895-96 n.11 (1984)).  Once the moving party has provided such evidence, "the party

opposing the fee award then has the burden to challenge, by affidavit or brief with

sufficient specificity to give fee applicants notice, the reasonableness of the requested

fee." Rode, 892 F.2d at 1183 (further citation omitted).  The Court may not "decrease a

fee award based on factors not raised at all by the adverse party." Id.; Bell v. United

Princeton Prop., Inc., 884 F.2d 713, 720 (3d Cir. 1989).

If the "opposing party lodges a sufficiently specific objection to an aspect of a fee

award, the burden is on the party requesting the fees to justify the size of its award."

Interfaith, 426 F.3d at 713.  The "district court has a great deal of discretion to adjust the fee award in light of those objections."  Rode, 892 F.2d at 1183; Bell, 884 F.2d at 721 (noting that "the court will inevitably be required to engage in a fair amount of 'judgment calling' based upon its experience with the case and its general experience as to how much time a case requires").

### 2.    Prevailing party

A party is considered prevailing when it has succeeded on "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley, 461 U.S. at 433.  However, even where the party technically prevails in the litigation, "counsel fees should only be awarded to the extent that the litigant was successful."  Washington, 89 F.3d at 1042 (citing Abrams v. Lightolier, Inc., 50 F.3d 1204, 1222 (3d Cir.1995)); Hensley, 461 U.S. at 434 (noting that the district court may be obligated to "adjust the fee upward or downward" based on "the important factor of the 'results obtained'").

When the plaintiff's success is not entire, the district court has discretion to adjust the award by either (1) excluding the number of hours "spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed," Rode, 892 F.2d at 1183, or (2) "reduc[ing] the award to account for the limited success," by, for example, considering "[t]he amount of damages awarded, when compared with the amount of damages requested."  Washington, 89 F.3d at 1042

(quoting Abrams, 50 F.3d at 1222); Hensley, 461 U.S. at 436-37.

In ascertaining the degree of success, the Court focuses on the "overall relief obtained by the plaintiff." Id. at 435.  When "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award," a markdown for limited success may not be appropriate.  Hensley, 461 U.S. at 424, 435 (holding that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee [and] . . . the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit").

It is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested, " since a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time."  Windall, 51 F.3d 1179, 1190 (3d Cir.1995) (citing Hensley, 461 U.S. at 436 n.11); see also McKenzie v. Kennickell, 684 F.Supp. 1097, 1106 n.30 (D.D.C.1988) (considering monetary value of promotion when calculating attorney fees).  Moreover, it is not dispositive that the plaintiff was not victorious on every claim.  Failla v. City of Passaic, 146 F.3d 149, 160 n.15 (3d Cir.1998) (holding that "[a]lthough [the plaintiff] did not succeed on every claim originally asserted in his complaint, the successful and unsuccessful claims all arose from a common core of fact").  However, a reduction is appropriate "if the relief, however significant, is limited in comparison to the scope of the litigation as a whole."  Id. at 440.

Defendant argues that Plaintiff received only a small portion of the relief sought. In support of this argument, Defendant alleges that "Plaintiff failed to obtain a verdict on most of her claims and many other claims were dropped or resolved by summary judgment prior to trial." (Opp'n, p. 3.) Specifically, Defendant points out that all claims by Plaintiff's husband were resolved in favor of Defendant through summary judgment.[2] Of the claims submitted to the jury, Plaintiff received a verdict in her favor as to hostile work environment and at the re-trial on damages, Plaintiff was awarded $50,000.00.

Defendant also argues that because Plaintiff rejected an offer of judgment, pursuant to FED. R. CIV. P. 68, in the amount of $125,000.00, she is not a prevailing party because "prevailing status [is conferred] to litigants whose lawsuit forces a defendant to do more than it has already committed to do." (Opp'n, p. 4) (citing Ashley v. Atl. Richfield Co., 794 F.2d 128, 136 n.2 (3d Cir. 1986)). Defendant reasons that because it was already committed to pay Plaintiff $125,000.00 pursuant to its offer of judgment, the judgment of $50,000.00 does not require it to do any more than it had already committed to do. This argument is unpersuasive. In Ashely, the Third Circuit stated that a lawsuit is frivolous when it "results in the defendant doing no more than it was already committed to do," and, therefore, "[a] lawsuit that has sufficient merit to move the defendant to do more than it was already committed to do will satisfy [the second step–that the causal

---

[2] Plaintiff's husband alleged claims of discrimination, retaliation and breach of implied contract arising from his employment with Defendant.

connection between the relief obtained and the litigation]."  Id. (quoting Disabled in Action of Pennsylvania v. Pierce, 789 F.2d 1016, 1019 (3d Cir. 1986)).  Here, the lawsuit moved Defendant to do more than it was originally committed to do, whether it was pursuant to the offer of judgment or the judgment entered on the jury's verdict.

Therefore, the Court finds that by succeeding on her claim of hostile work environment, Plaintiff is a prevailing party; however, the Court will not award fees that apply solely to unrelated or unsuccessful claims.

### 3.     Hourly rate

In order to determine a reasonable hourly rate, the Court must look to the prevailing market rate.  See Missouri v. Jenkins, 491 U.S. 274, 285 (1989) (noting that "we have consistently looked to the marketplace as our guide to what is 'reasonable'").  The attorney's customary billing rate is the proper starting point for calculating fees.  Cunningham v. City of McKeesport, 753 F.2d 262, 268 (3d Cir. 1985), vacated on other grounds, 478 U.S. 1015 (1986).

The party moving for fees has the burden to "produce satisfactory evidence—in addition to [her] own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum, 465 U.S. at 896 n.11; see also Becker v. ARCO Chem. Co., 15 F. Supp. 2d 621, 628 (E.D. Pa. 1998) (noting that "[t]he prevailing party's burden may be satisfied by the submission of affidavits of attorneys with personal

knowledge of the hourly rates customarily charged in the relevant market"). Mere "conclusory affidavits from counsel" are not enough to establish the reasonableness of a rate. Furniture Medic, LP v. Faber, 2001 WL 1528337 (E.D. Pa. 2001).

"'[A] district court may not set attorneys' fees based upon a generalized sense of what is customary and proper, but rather must rely upon the record.'" Smith v. Philadelphia Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1998) (quoting Coleman v. Kaye, 87 F.3d 1491, 1510 (3d Cir. 1996) (alteration and emphasis in original)). "The plaintiff bears the burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." Id. "If hourly rates are disputed, the district court must conduct a hearing to determine the reasonable market rates." Id.; but see Washington, 89 F.3d 1031, 1036 (3d Cir. 1996) (holding that where the plaintiff did not meet his prima facie burden of proof as to prevailing market rates, "the district court must exercise its discretion in fixing a reasonable hourly rate").

Here, Plaintiff submits the Certification of Linda B. Kenney, Esquire, to support her requested rate of $275.00. Moreover, Plaintiff argues that counsel is entitled to a higher fee because he "was forced to provide virtually around the clock attention and preparation given the massive defense to this action presented by [Defendant] in a complex reverse discrimination case involving multiple causes of action and separate standards of proof under both New Jersey and Federal Law (sic)." (Pl. Br., p. 9.) In

14

addition, in her reply, Plaintiff argues that the higher prevailing rate is warranted in light of the "difficulty of the cause of action and the uniqueness of the claim, particularly when exposing illegal conduct."[3]  (Reply, pp. 5-6.)  Defendant disputes whether $275.00 accurately reflects the prevailing rate, which it submits is $250.00.  In support, Defendant cites a late 2005 decision, wherein the prevailing rate was set at $250.00.

Plaintiff cannot seriously dispute Defendant's proffered prevailing rate in light of the fact that the certification she submitted attests that the appropriate rate, albeit on the lower end, was $225.00.[4]  Therefore, the Court finds that Plaintiff has failed to meet her prima facie burden with respect to proving that the prevailing market rate is $275.00. Moreover, the Court does not find this litigation to be so complex as to require a higher rate, especially in the absence of a certification attesting to same.  Finally, the Court finds that counsel will be made whole for his "around the clock attention and preparation" based on the time that he has submitted and no enhancement to the prevailing rate is

---

[3] The Court rejects this argument because logically, the purpose of any lawsuit, by its very nature, is to expose illegal conduct.  Indeed, neither of the cases cited by Plaintiff in support of this proposition, Randine v. Pantzer, 661 A.2d 1202 (N.J. 1995) nor Singer v. State, 472 A.2d 138, 145 (N.J. 1984), support the conclusion that an attorney is entitled to an enhanced rate based on the illegality of the conduct he was pursuing.

[4] Interestingly, the affidavit that Plaintiff submitted in support of her prevailing rate was prepared in 2002, see (Pl. Br., Ex. C, p. 14), and bears relation to neither the case nor counsel presently before the Court; however, because Defendant does not raise this issue, the Court will accept the affidavit as satisfactory.  See Washington, 89 F.3d 1031, 1036 (3d Cir. 1996) (noting that when "the opposing party has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward").

required.  Accordingly, the Court finds that a reasonable hourly rate for this case is $250.00.

### 4.  Travel time

In her application for fees, Plaintiff includes travel time at the prevailing market rate.  Defendant objects, arguing that travel time should be excluded or reduced to one-half of the prevailing market rate.  (Opp'n, pp. 8-9 (citing <u>Daggett v. Kimmelman</u>, 617 F. Supp. 1269, 1282 (D.N.J. 1985) (reducing lodestar award to compensate for travel time where record failed to reflect performance of legal work during same); <u>Cruz v. Local Union No. 3</u>, 34 F.3d 1148, 1161 (2d Cir. 1994) (indicating that a fifty-percent reduction of attorney's billable rate for time spent traveling may be more appropriate than excluding them altogether); <u>McDonald v. Armontrout</u>, 860 F.2d 1456, 1462-63 (8th Cir. 1988) (affirming district court's reduction of billable travel time to fifty-percent of the attorney's reasonable billing rate); <u>Furtado v. Bishop</u>, 635 F.2d 915, 922 (1st Cir. 1980) (excluding travel time entirely from the lodestar calculation)).

The Third Circuit has held that travel time is "generally recoverable 'when it is the custom of attorneys in the local community to bill their clients separately for [it].'" <u>Planned Parenthood of Cent. New Jersey v. Attorney Gen. of the State of New Jersey</u>, 297 F.3d 253, 267 (3d Cir. 2002) (quoting <u>Abrams</u>, 50 F.3d at 1225 (alteration in original)). In order to determine whether it is customary to bill for travel time, the district court generally must review at least some evidence; however, the Third Circuit has noted that

16

"travel time is apparently compensable in New Jersey."  Id. (citing Abrams, 50 F.3d at

1225).  Therefore, the Court finds that travel time is a billable event, and that it would be

inappropriate to exclude completely Plaintiff's request for its inclusion.

In her reply, Plaintiff, while conceding that "most courts have reduced the

Lodestar factor when considering travel, only, in calculations of reasonable hours,"

apparently argues that this case is somehow different because "[she] believes that this

time spent in a hotel close to the courthouse incurring a cost in excess of $2,000.00 was

necessary in order to avoid two hours of travel back and forth from Atlantic City.  These

two hours permitted additional time to prepare for trial."  This argument seems irrelevant

to a discussion regarding the rate at which travel time is billed.  Therefore, the Court finds

that travel time is appropriately billed at fifty-percent of the reasonable hourly rate.

**5.  Excessive, redundant or otherwise unnecessary hours**

While "it is not necessary to know the exact number of minutes spent nor the

precise activity to which each hour was devoted," Lindy Bros. Builders, Inc. of

Philadelphia v. Am. Radiator & Standard Sanitary Corp., 487 F.2d 161, 167 (3d Cir.

1973), "[i]t is an established proposition of law that '[w]here the documentation of hours

is inadequate, the district court may reduce the award accordingly,'" Washington, 89 F.3d

1031 (quoting Hensley, 461 U.S. at 433).  In addition, a prevailing party is not entitled

necessarily to compensation for all the time its attorneys spent on the case; rather, "a court

awarding fees must 'decide whether the hours set out were reasonably expended for each

of the particular purposes described and then exclude those that are 'excessive, redundant or otherwise unnecessary'" Interfaith Cmty. Org., 426 F.3d at 711 (quoting Pub. Interest Resource Group, 51 F.3d at 1188).  Moreover, "while aggregation of hours is not the best method of listing hours expended," it does not necessarily prevent review by the district court; it does, however, expose the fee applicant to the risk of having her hours reduced for excessiveness "because the court may [assume] that more hours were spent on a task than actually were expended." Rode, 892 F.2d at 1191.  Courts commonly reduce fee awards "when a lawyer spends time on tasks that are easily delegable to non-professional assistance." Halderman ex rel. Halderman v. Pennhurst State Sch. & Hosp., 49 F.3d 939, 942 (3d Cir. 1995).

"[T]he district court retains a great deal of discretion in deciding what a reasonable fee award is, so long as any reduction is based on objections actually raised by the adverse party." Bell, 884 F.2d at 721 (citing Hensley, 461 U.S. at 437).  "In determining whether a fee request is excessive . . ., and in setting the amount of any reduction, the court will inevitably be required to engage in a fair amount of 'judgment calling' based upon its experience with the case and its general experience as to how much time a case requires." Id. at 721.

The party raising a challenge to a fee petition on the basis that a time entry was unreasonable or unnecessary "need only specify with particularity the reason for its challenge and the category (or categories) of work being challenged; it need not point to

18

each individual excessive entry." Id. at 720-21.  When the party lodges a sufficiently

specific objection, "the burden is on the party requesting the fees to justify the size of its

award."  Interfaith Cmty. Org., 426 F.3d at 713.

In addition to lodging specific objections to numerous time entries, Defendant

argues that Plaintiff's submission is vague, inaccurate and excessive in its entirety.

(Opp'n, pp. 9-10.)  As a result, Defendant urges the Court to reject the entire fee

application.  Although the Court is mindful that Defendant's objections could have been

more specific, they were specific enough to give Plaintiff a fair chance to respond and

defend her request.  Indeed, as to those specific objections made by Defendant, Plaintiff

responded that "[she] is not going to review each of the items set forth in the defendants'

(sic) objections at pages 10 through 20 of the brief," therefore relying on her original

submission.  (Reply, p. 7.)

Preliminary, the Court is concerned with the affidavit submitted by Plaintiff's

counsel in support of his billing.  Entry after entry claims that Plaintiff's counsel spent

incredible amounts of time pursuing certain activities,[5] which causes the Court to wonder

whether it was possible for counsel to have any private life or time to service other

clients.  It becomes even more astounding when the Court considers that Plaintiff alleges

that she has already made adjustments for that time which counsel expended pursuing

unsuccessful claims.  Such billing practices can, in certain circumstances, result in the

---

[5] See, e.g., Section C.5., paragraphs 44, 66, 68 and 72, infra.

19

denial of fees entirely;[6] however, the more prudent approach is to consider Plaintiff's

application and make adjustments where appropriate, giving consideration to the

objections raised and the Court's experience and reasonable discretion.  Without adequate

records, aggregated billing, apparent excessiveness of many entries and the decision of

the Court to resist the complete rejection of the application, the following analysis was

required.

1.   **March 22, 2000 - Review of various newspaper articles dealing with [Plaintiff's] tenure during Code Enforcement - 2 ½ hours @ $275.00 = $687.50 (reduced from 3 hours for articles involving tenure only)**.

The Court finds that this time is unnecessary and that the entry lack sufficient specificity to afford meaningful review, i.e., the number and date range of articles reviewed.  Accordingly, the time will be stricken from the fee application.

---

[6] See Brown v. Sackler, 612 F.2d 1057, 1059 (7th Cir. 1980) (holding that the district court may deny fees entirely where a petition is "intolerably inflated" and "outrageously excessive"); Lewis v. Kendrick, 944 F.2d 949, 956 (1st Cir. 1991) (holding that the district court may deny fees entirely where there was an "inexcusable" failure to cull unnecessary or redundant hours); Fair Hous. Council of Greater Washington v. Landow, 999 F.2d 92, 96-98 (4th Cir. 1993) (holding that the district court may deny fees entirely where the amount requested "was so outrageously excessive as to shock the conscience of the court").

2.    **November 6 - November 11, 2000 - review of all materials accumulated by [Plaintiff] over a 5 year period of time including the complete EEOC file, complaint of discriminatory action by [Defendant] and three office meetings with [Plaintiff] = 18 hours @ $275.00 reduced by 12 hours for those claims other than hostile work environment and punitive damages leaving a 6 hour review of the events at the Code Enforcement Office from January 19, 1994 through August 11, 1995 - 8 hours @ $275.00 = $2,200.00.**

The Court finds that Plaintiff reduced the time to six hours, but failed to reflect same in total. Accordingly, the time will be reduced to six hours.

3.    **November 22, 2000 - receipt of Sheriff's Office return of service on [Defendant] and submission to [Plaintiff] with correspondence as to what would be the possible next steps taken by the [Defendant] - ½ hour @ $275.00 = 137.50.**

The Court finds that this time is excessive to the extent that receipt of a return of service is a non-billable event. Moreover, the text of the entry does not give the Court any basis to conclude that such a correspondence should require one-half hour. Accordingly, the time will be reduced to one-quarter hour.

4.    **December 21, 2000 - Notice of Removal to Federal Court filed by defense counsel and review of same with client - 1 ½ hours @ $275.00 = $412.50.**

The Court finds that this time is excessive to the extent that the notice associated with removal is not so complex as to require a one and one-half hour review. Accordingly, the time will be reduced to one-half hour.

5.    **February 2, 2001 - Submission to all defense counsel of Supplemental Requests for Production of Documents and preparation of same - 1 hr. @ $275.00 = $275.00.**

The Court finds that this time is excessive and includes time that could have been performed by a non-professional. Accordingly, the time will be reduced to one-half hour.

6.   **February 5-6, 2001 - preparation and submission to the Court and to all adversaries Joint Discovery plan and scheduling conference before Judge Rosen on February 9, 2001 with 2 hours travel time - 4 hours @ $275.00=$1,100.00.**

In accordance with section C. 4., supra, the Court finds that an adjustment for travel time is appropriate. Accordingly, the two hours for travel will be awarded at a reduced rate of $125.00.

7.   **February 6, 2001 - Preparation of Joint Discovery Plan and submission to Judge Rosen - 3 ½ hours @ $275.00 = $962.50.**

The Court finds that this time is duplicative of paragraph 6, supra. Accordingly, the time will be stricken from the submission.

8.   **February 9, 2001 - travel to Camden and back and conference with Judge Rosen - 3 hours @ $275.00 = $825.00.**

The Court finds that this time is duplicative of paragraph 6, supra. Accordingly, the time will be stricken from the submission.

9.   **August 31, 2001 - submission of Rule 26 disclosures to defense counsel - 1 ½ hours @ $275.00 = $412.50.**

The Court finds that this time is excessive and duplicative of other entries, i.e., an entry dated July 16, 2001. Accordingly, the time will be stricken from the submission.

10.  **October 23, 2001 - Correspondence to defense counsel concerning securing of discovery - ¼ hour @ $275.00 = $68.75.**

The Court finds that time is excessive and duplicative of another entry of the same date. Accordingly, the time will be stricken from the submission.

11.  **November 13, 2001 - review of answers to interrogatories submitted to counsel for Andrew Mair and James Whelan dealing with hostile work environment issues only - 1 ½  hours @ $275.00 = $412.50.**

The Court takes notice that liability was found as to neither Andrew Mair nor James Whelan. Accordingly, the time will be stricken from the

22

submission.

12.   **December 3, 2001 - Lengthy review of all Code Enforcement documents maintained by [Plaintiff] together with newspaper articles discussing her tenure during Code Enforcement and review from December 3, 2001 to December 7, 2001 of over 4 boxes of documents relating strictly to the 20 months that [Plaintiff] was Chief of Code Enforcement - 16 hours @ $275.00 = $4,400.00.**

The Court finds that this time is excessive and duplicative of other entries, including entries dated March 22, 2000 and October 4, 6, 8, 2000.. Accordingly, the time will be stricken from the submission.

13.   **December 7, 2001 - request for more specific documents from defense counsel - ¼ hour @ $275.00 = $68.75.**

The Court finds that this time is duplicative of another entry of the same date. Accordingly, the time will be stricken from the submission.

14.   **December 17, 2001 - Service of Amended Complaint following Motion permitting Amended Complaint and service on defense counsel - 1 ½ hours @ $275.00 = $412.50.**

The Court finds that this time is excessive and includes time that could have been performed by a non-professional, that is, the text provides no explanation as to why a professional was required to effectuate service. Accordingly, the time will be reduced to one-half hour.

15.   **January 15, 2002 - extensive correspondence calendaring depositions with multiple telephone calls and various subpoenas submitted for the depositions - 2 hours @ $275.00 = $550.00**

The Court finds that this time is excessive and includes time that could have been performed by a non-professional. Accordingly, the time will be reduced to one hour.

16. **February 11, 2002 - submission of additional documents to defense counsel which were specifically requested at the deposition of [Plaintiff] and review of those documents with [Plaintiff] - 2 ½ hours @ $275.00 = @ $687.50.**

The Court finds that this time is duplicative of other entries of the same date and February 27, 2002.  Moreover, an additional entry on February 11, 2002 claims that all documents relating to Plaintiff's tenure in Code Enforcement were produced.  Because that is the only relevant period based on Plaintiff's limited success, any time for producing documents not related thereto would be inappropriate.  Accordingly, the time will be reduced to one hour.

17. **February 25, 2002 - Notice of Motion to Suppress the Defenses of the [Defendant] for failure to provide discovery with multiple attachments and correspondence specifically outlining those documents which were necessary, approximately half of which dealt with the hostile work environment claims - 1 ½ hours @ 275.00 = $412.50.**

The Court finds that this time is duplicative.  Moreover, the Court's docket reflects that only one motion was filed during the respective date range. Accordingly, the time will be stricken from the submission.

18. **February 27, 2002 - submission of 55 additional documents requested by defendants during depositions of [Plaintiff] and review of all documents with [Plaintiff] - 3 ½ hours @ $275.00 = $962.50.**

The Court finds that this time is duplicative of entries dated February 11, 2002.  Moreover, one of the entries on February 11, 2002 claims that all documents relating to Plaintiff's tenure in Code Enforcement were produced.  Because that is the only relevant period based on Plaintiff's limited success, any time for producing documents not related thereto would be inappropriate absent an explanation from Plaintiff.  Accordingly, the time will be reduced to one hour.

19. **March 18, 2002 - Notice of Depositions of Andrew Mair - 1/4 hour @ $275.00 = $68.75.**

The Court takes notice that no liability was found as to Andrew Mair. Moreover, this task could have been performed by a non-professional. Accordingly, the time will be stricken from the submission.

20.   **March 22-25, 2002 - meetings with client and response to defendants'
      answers to interrogatories and Notice to Produce Documents, multiple
      reviews of same and submission to defense counsel limited to hostile
      work environment issue - 6 ½ hours @ $275.00 = $1787.50.**

      The Court finds that this time is excessive and the entry lacks sufficient
      specificity to afford meaningful review insofar as it does not provide an
      explanation for the multiple reviews.  Accordingly, the time will be reduced
      to three hours.

21.   **May 2, 2002 - travel to and from Camden and Settlement Conference
      before Judge Rosen - 3 ½ hours @ $275.00 = $962.50.**

      In accordance with section C. 4., supra, the Court finds that an adjustment
      for travel time is appropriate.  Moreover, the Court takes notice Atlantic
      City is a minimum of two hours, round-trip, from Camden.  Accordingly,
      the two hours for travel will be awarded at a reduced rate of $125.00.

22.   **May 2, 2002 - submission of supplemental requests for production of
      documents as ordered by Judge Rosen together with submission of
      specific dates for completion of depositions as ordered by Judge Rosen
      and correspondence to counsel - 2 hours @ $275.00 = $550.00.**

      The Court finds that this time is excessive to the extent it bills only for
      submissions of documents rather than preparation.  Accordingly, the time
      will be reduced to one hour.

23.   **June 14, 2002 - correspondence to and from Mr. Coppin regarding
      arranging dates for completion of depositions - ½ hour @ $275.00 =
      $137.50.**

      The Court finds that this time is excessive to the extent that the text of the
      entry does not suggest that the number of depositions was so numerous as to
      require one-half hour.  In keeping with Plaintiff's counsel's practice of
      billing one-quarter hour for correspondences, the Court will adjust same.
      Accordingly, the time will be reduced to one-quarter hour.

25

24.     **June 19, 2002 - submission to [Plaintiff] of correspondence and review of transcripts to date - 2 hours @ $275.00 = $550.00.**

The Court finds that this time is duplicative of entries dated February 11, 2002 and February 27, 2002. Accordingly, the time will be reduced to one hour.

25.     **July 16, 2002 - office conference with [Plaintiff] reviewing complete written discovery submitted by defense counsel as well as extensive summary report on depositions of Karen Upshaw, [Plaintiff], Yolanda Laney, Andrew Mair, Rosalind Nance, James Whelan, Benay George and Rick Russo together with preparation of same - 12 ½ hours @ $275.00 = $3,437.50.**

The Court finds that this time is duplicative of entries dated February 11, 2002, February 27, 2002 and June 19, 2002. Accordingly, the time will be reduced to six hours.

26.     **August 5, 2002 - correspondence to new defense counsel in response to his request asking for certain documents that could not be located due to the transfer of the files and the review of discovery that was necessary to comply with this request - 6 ½ hours @ $275.00 = $1,787.50.**

The Court finds that this entry lacks sufficient specificity to afford meaning review of the reasonableness of the request. Accordingly, the time will be reduced to three hours.

27.     **August 30, 2002 - confirmation of deposition of Barbara Camper and [Plaintiff] - ½ hour @ $275.00 = $137.50.**

The Court finds that this time is excessive and could have been performed by a non-professional. Accordingly, the time will be stricken from the submission.

28. **October 3-14, 2002 - Preparation of [Plaintiff's] response to Defendants' Statement of Material Facts, Additional Statement of Material Facts and Brief in Opposition to the Defendant's Motion for Summary Judgment - 56 ¼ hours @ $275.00 = $15,468.75.**

The Court finds that this time is excessive to the extent that the record reflects that of the fifty pages in the brief, one page, or twenty-three lines, which, incidentally, are void of case law, addressed Plaintiff's hostile work environment claim. Plaintiff's opposition was of moderate length, not particularly complex and did not present any significant novel issues of law. In light of counsel's experience, fifty-six and one-quarter hours to address the hostile work environment issues seems extraordinary. Accordingly, the time will be reduced to forty hours.

29. **October 10 - October 24, 2002 - [Plaintiff's] response to defendants' Motion for Summary Judgment with Statement of Material Facts, Counter statement and Legal argument confined to hostile work environment and punitive damages only - 8 ¼ hours @ $275.00 = $2,268.75.**

The Court finds that this time is duplicative of an entry dated October 3-14, 2002. Accordingly, it will be stricken from the submission.

30. **October 15, 2002 - Submission of Affidavit from [Plaintiff] in opposition to defendants' Notice of Motion for Summary Judgment and those issues dealing with hostile work environment, paragraph 1 - 30 and review with plaintiff with submission to Court - 3 ½ hours @ $275.00 = $962.50.**

The Court finds that this time is duplicative of another entry. Accordingly, it will be stricken from the submission.

31. **October 21, 2002 - settlement conference and travel to and from courthouse - 3 hours @ $275.00 = $825.00.**

In accordance with section C. 4., <u>supra</u>, the Court finds that an adjustment for travel time is appropriate. Moreover, the Court takes notice Atlantic City is a minimum of two hours, round-trip, from Camden. Accordingly, the two hours for travel will be awarded at a reduced rate of $125.00.

32. **October 29, 2002 - Submission of correspondence to defense counsel and hand delivery of [Plaintiff's] materials in Opposition to Summary Judgment - ½ hour @ $275.00 = $137.50.**

The Court finds that this time is excessive and could have been performed partially by a non-professional.  Accordingly, the time will be stricken from the submission.

33. **March 28, 2003 - Correspondence to [Plaintiff] confirming oral argument before Judge Rodriguez on May 8, 2003 - ¼ hour @ $275.00 = $68.75.**

The Court finds that this task could have been performed by a non-professional.  Accordingly, the time will be stricken from the submission.

34. **May 8, 2003 - travel to and from Camden and oral argument before Judge Rodriguez - 3 ½ hours @ $275.00 = $962.50.**

In accordance with section C. 4., <u>supra</u>, the Court finds that an adjustment for travel time is appropriate.  Moreover, the Court takes notice Atlantic City is a minimum of two hours, round-trip, from Camden.  Accordingly, the two hours for travel will be awarded at a reduced rate of $125.00.

35. **July 7-8, 2003 - Summary of decision by Judge Rodriguez in [Plaintiff's] case and four page review and outline of findings and review with client - 8 ½ hours @ $275.00 = $2,337.50 (reduced from 12 hours of actual time spent.**

The Court finds that this time does not accurately adjust for Plaintiff's lack of success in that the majority of issues addressed in the summary judgment opinion ultimately were resolved against Plaintiff.  Accordingly, the time will be reduced to two hours.

36. **November 20, 2003 - travel to and from courthouse and Settlement Conference before Judge Rosen - 3 hours @ $275.00 = $825.00.**

In accordance with section C. 4., <u>supra</u>, the Court finds that an adjustment for travel time is appropriate.  Moreover, the Court takes notice Atlantic City is a minimum of two hours, round-trip, from Camden.  Accordingly, the two hours for travel will be awarded at a reduced rate of $125.00.

28

44.     **March 10-29, 2004 - Multiple exchanges of pre-trial documents
between counsel and finalization of Joint Final Pre-Trial Order to be
delivered to Judge Rosen - 24 ½ hous @ $275.00 = $6,737.50.**

The Court finds that this time is excessive because the Joint Final Pretrial
Order is of normal length and, as noted elsewhere, does not involve
litigation of complicated legal or factual issues.  Moreover, Defendant
objects that during some of this period, its counsel was on vacation.
Defendant also argues that further objection is not possible because of the
"block" billing.  In addition, the Court notes that given the preparation
Plaintiff claims in advance of this entry, no exceptional preparation should
have been necessary to complete the Joint Final Pretrial Order.
Accordingly, the time will be reduced to twelve hours.

37.     **March 30, 2004 - Joint Final Pre-Trial conference before judge Rosen
and travel to and from Camden - 3 hours @ $275.00 = $825.00.**

In accordance with section C. 4., supra, the Court finds that an adjustment
for travel time is appropriate.  Moreover, the Court takes notice Atlantic
City is a minimum of two hours, round-trip, from Camden.  Accordingly,
the two hours for travel will be awarded at a reduced rate of $125.00.

38.     **May 4, 2004 - preparation of extensive time line as to all issues
concerning hostile work environment - 6 ½ hours @ $275.00 =
$1,787.50.**

The Court finds that this time is excessive inasmuch as Plaintiff's counsel
had already outlined the time line in preparing the Joint Final Pre-Trial
Order and related review.  Accordingly, the time will be reduced to three
hours.

39.     **May 26, 2004 - Travel to and from Camden and scheduling conference
and settlement discussions before Judge Rodriguez - 3 ½ hours @
$275.00 = $962.50.**

In accordance with section C. 4., supra, the Court finds that an adjustment
for travel time is appropriate.  Moreover, the Court takes notice Atlantic
City is a minimum of two hours, round-trip, from Camden.  Accordingly,
the two hours for travel will be awarded at a reduced rate of $125.00.

40.  **June 3, 2004 - Office conference with [Plaintiff] regarding the Joint Final Pre-Trial form and the witnesses that will be produced at the time of trial - 1 ½ hours @ $275.00 = $412.50.**

The Court finds that this is excessive. Accordingly, the time will be sticken from the submission.

41.  **July 23, 2004 - correspondence to Judge Rodriguez and Judge Nugent concerning the start of the [Plaintiff's] matter to being on Monday, September 13, 2004 - ¼ hour at $275.00 = $68.75.**

The Court finds this entry unnecessary. Accordingly, the time will be stricken from the submission.

42.  **August 26, 2004 - submission of Subpoenas to all witnesses to appear at trial beginning September 13, 2004 - 3 ½ hours @ $275.00 = $962.50.**

The Court finds that this task, in part, could have been performed by a non-professional. Accordingly, the time will be stricken from the submission.

43.  **September 3, 2004 - submission to Judge Rodriguez and Kim Baldwin, via e-mail, of Plaintiff's Request to Charge, Plaintiff's Motions in Limine, plaintiff's lists of exhibits, plaintiff's proposed Jury Voir Dire, Jury Answer Sheet, plaintiff's witness list and Trial Brief in addition to enclosing a Request to Charge on computer disc and preparation of same - 12 hours @ $275.00 = $3,300.00.**

The Court finds that this entry is excessive given Plaintiff's limited success on the issues presented to the jury and an adjustment should be made for same. Moreover, the Court finds that this entry is duplicative of two entries labeled August 30, 2004, wherein counsel billed a collective eight and one-half hours for "[p]reparation and submission of proposed Joint Jury Voir Dire" and "[s]ubmission of plaintiff's trial brief and Joint Jury Voir Dire and preparation of same. Accordingly, the time will be reduced to six hours.

44.   **September 5- September 15, 2004 - preparation for trial, submission of Motions in Limine, Witness list, Jury Voir Dire and special jury selection with multiple meetings with [Plaintiff] and telephone discussions with all witnesses - total time 125 hours, reduced by 50% as it applies to the removal and retaliation causes of action - 62 ½ hours @ $275.00 = $17,187.50.**

The Court finds that this entry is duplicative of numerous entries during the same period.  For example, the entry quoted at Paragraph 50, supra, also billed for the preparation and submission of Plaintiff's motions in limine, witness list and jury voir dire.  Another example is an entry dated September 7, 2004, wherein Plaintiff's counsel attests that he conducted a "complete review with client" of certain trial material.  Moreover, Plaintiff's time entries for this period total an incredible 178 hours.  Accordingly, this entry will be stricken from the submission.

45.   **September 10, 2004 - receipt & review with plaintiff of [Defendant's] witness list and 20 subpoenas sent to various witnesses that the [Defendant] proposed to utilize at the time of trial and review of each of those subpoenas with [Plaintiff] in two separate office conferences for purposes of preparation of cross-examination - 10 ½ hours @ $275.00 = $2,887.50.**

The Court finds that this entry is duplicative of the entry for September 11 & September 12, 2004 , in that it plainly states that two separate office conferences were conducted but only lists one date.  To the extent that there is any ambiguity in the entry, it must be resolved against Plaintiff.  Accordingly, the time will be reduced to five hours.

46.   **September 17, 2004 - correspondence to Ms. Baldwin concerning [Plaintiff's] use of accrued sick time while she was appearing at her trial and a reminder to Ms. Baldwin as to the readings of transcript testimony.**

The Court finds that this entry is excessive to the extent that the text of the entry does not indicate any subject so difficult as to require one-half of an hour to reduce it to writing.  Accordingly, the time will be reduced to one-quarter hour.

31

47.     **September 23, 2004 - preparation of next day's testimony as to Arthur Erhart and Karen Upshaw, together with review of deposition readings as it applies to plaintiff's tenure as Chief of Code Enforcement and witness preparation - 4 ½ hours @ $275.00 = $1,237.50.**

The Court finds that this entry is duplicative of other entries of similar date. Accordingly, the time will be reduced to two hours.

48.     **September 27, 2004 - further preparation for cross-examination of Andrew Mair and James Whelan - 2 ¼ hours @ $275.00 = $618.75.**

The Court finds that this entry is unnecessary to the extent that it relates to Defendants against whom no liability was found. Accordingly, the time will be stricken from the submission.

49.     **October 1 - October 3, 2004 - review and preparation of jury charges as it applies to hostile work environment and punitive damages and review of daily court transcripts for preparation for closing arguments as it applies to hostile work environment and punitive damages - 14 ½ hours @ $275.00 = $3,987.50.**

The Court finds that this entry is duplicative of other entries for review and preparation of jury charges. Accordingly, the time will be reduced to ten hours.

50.     **October 8, 2004 - jury deliberations - 7 ½ hours @ $275.00 = $2,062.50.**

The Court finds that this entry is excessive because according to the minutes entry for this date, Court commenced at 9:35 a.m. and adjourned at 2:00 p.m. Accordingly, the time will be reduced to four and one-half hours.

51.     **October 12, 2004 - jury deliberations - 6 ¼ hours @ $275.00 = $1,718.75.**

The Court finds that this entry is excessive because according to the minutes entry for this date, Court commenced at 9:45 a.m. and adjourned at 12:00 p.m. Accordingly, the time will be reduced to two and one-half hours.

52.   **October 14, 2004 - punitive damage arguments and jury deliberations and jury verdict as to punitive damages - 7 ½ hours @ $275.00 = $2,062.50.**

The Court finds that this entry is excessive because according to the minutes entry for this date, Court commenced at 9:00 a.m. and adjourned at 1:05 p.m.  Accordingly, the time will be reduced to four hours.

53.   **November 22, 2004 - [Plaintiff's] Post-Trial Brief and preparation of same - 7 ½ hours @ 275.00 = $2,062.50.**

The Court finds that this entry is duplicative of the entry dated November 2 - December 9, 2004.  Accordingly, the time will be stricken from the submission.

54.   **December 15, 2004 - correspondence to Judge Rodriguez confirming that neither party will be prejudiced by any delay in the decisions on the Post-Trial Motions or on any subsequent trials that may need to occur in response to Ms. Baldwin's argument that plaintiff has waived her right to seek counsel fees - 1 ¼ hours @ $275.00 = $337.50.**

The Court finds that this entry is excessive in that there is nothing in the description to indicate that one hour is not sufficient time to prepare such a letter.  Accordingly, the time will be reduced to one hour.

55.   **February 10, 2005 - receipt & review of Judge Rodriguez's decision on all Post-Trial Motions and ordering a new trial on damages only in regards to the hostile work environment and punitive damages claims and complete review of same with client and legal research concerning the case law cited within Judge Rodriguez's decision - 14 hours @ 275.00 = $3,850.00.**

The Court finds that this entry is excessive in that there is nothing in the text of the entry to indicate that ten hours is not sufficient time to review this Court's opinion.  Accordingly, the time will be reduced to ten hours.

56. **May 23- June 10, 2005 - Preparation and ultimate submission of Joint Final Pre-Trial Order submitted by Ms. Baldwin to Judge Rodriguez on June 10, 2005 - 8 ¼ hours @ $275.00 = $2,268.75.**

The Court finds that this entry is a duplication of the entry dated May 18 - June 1, 2005. Accordingly, the time will be stricken from the submission.

57. **June 4, 2005 - June 8, 2005 - Complete review of Lexus search on Model Jury Charges in regards to hostile work environment and complete Lexus search and review of 172 cases in regards to emotional distress awarded in hostile work environment cases - 18 hours @ $275.00 = $4,950.00.**

The Court finds that this entry is excessive insofar as it is not necessary to review 172 cases and duplicative of other research billed in the relevant time frame. Accordingly, the time will be reduced to ten hours.

58. **June 9, 2005 - printout of Model Jury Instructions in regards to a hostile work environment and punitive damage claims and review of those instructions - 2 ¼ hours @ $275.00 - $618.75.**

The Court finds that this entry is duplicative of other entries in that it overlaps with time already billed. Accordingly, the time will be reduced to one hour.

59. **June 9, 2005 - submission of the completed Pre-Trial form to Ms. Baldwin and to Judge Rodriguez - 1 hour @ $275.00 = $275.00.**

The Court finds that this entry is excessive to the extent that it requests one hour for drafting a letter to submit forms already completed. Moreover, the entry includes time that could have been performed by a non-professional. Accordingly, the time will be reduced to one-half hour.

60. **July 20, 2005 - pre-trial conference before Judge Rodriguez with travel time and discussion of jury selection, motions in limine and any other documents that need to be submitted prior to trial - 3 hrs. @ $275.00 = $825.00.**

In accordance with section C. 4., supra, the Court finds that an adjustment

for travel time is appropriate. Moreover, the Court takes notice Atlantic City is a minimum of two hours, round-trip, from Camden. Accordingly, the two hours for travel will be awarded at a reduced rate of $125.00.

61. **September 13-19, 2005 - complete review of all documents exchanged in discovery over a 3 year period of time and sorting out those documents which specifically apply to plaintiff's hostile work environment claim and meeting with [Plaintiff] to confirm that there were no other documents that were missed - 12 ¼ hours @ $275.00 = $3,368.75.**

The Court finds that this entry is excessive to the extent that some of this preparation had to have been done in advance and preparation of the Joint Final Pre-Trial Order. Accordingly, the time will be reduced to six hours.

62. **October 6, 2005 - October 25, 2005 - Complete Lexus review of all potential cases awarding emotional distress damages in employment discrimination cases and review of over 100 pages of documents in regards to same - 3 ½ hours @ $275.00 = $962.50.**

The Court finds that this entry is duplicative of other related entries. Accordingly, the time will be reduced to two hours.

63. **October 14, 2005 - submission of prosed Joint Jury Questionnaire and instructions to [courtroom deputy] together with legal research conducted prior to that correspondence - 4 ¼ hours @ $275.00 = $1,168.75.**

The Court finds that this entry is excessive insofar as it purports to submit rather than to prepare and submit documents. Accordingly, the time will be reduced to two hours.

64. **October 25, 2005 - preparation of proposed Joint Jury Questionnaire forms for the Erhart 2 trial - 1 ½ hours = $412.50.**

The Court finds that this entry is duplicative of Paragraph 67, supra, and also purports to prepare a document that was submitted eleven days earlier. Accordingly, the time will be stricken from the submission.

65.     **November 20-27, 2005 review of complete transcript and file of the Erhart 1 matter with review of all transcripts and documents, specifically geared towards hostile work environment through August 11, 1995.  8 hours per day for 8 days - 64 hours at $275.00 per hour = $17,600.00.**

The Court finds that this time is excessive to the extent that it bills for a review of the complete transcript and file of the first trial in light of the fact that retrial was limited to hostile work environment.  Accordingly, the time will be reduced to thirty-two hours.

66.     **December 20, 2005 - January 6, 2006 - 6 hour per day review of all transcripts from all discovery conducted over a two year period of time with preparation of notes in regards to hostile work environment and any factor that may provide punitive damages on basis of the hostile work environment.  96 hours @ $275.00 per hour = $26,400.00.**

The Court finds that this entry is excessive and unnecessary to the extent that all discovery transcripts were reviewed when only hostile work environment was an issue at the second trial.  Moreover, the entry is duplicative of other entries.  For example, between November 20, 2005, and November 27, 2005, Plaintiff's counsel reviewed the complete file of the Erhart matter, which necessarily included these transcripts.  Accordingly, this time will be stricken from the submission.

67.     **February 22, 2006 - office conference with Rick Russo and Steve Greenwood in regards to their race based discrimination complaint which was ultimately handled by [Plaintiff] during the period of her being Chief of Code Enforcement and review of the race based discrimination complaint investigation and findings by Barbara Camper - 2 ½ hours @ $275.00 = $687.50.**

The Court finds that this entry is unrelated to the issues that would be presented to the jury during the second trial.  Accordingly, the time will be stricken from the submission.

68.     **March 6 - March 10, 2006 - preparation for Erhart 2 case - 48 hours @ $275.00 = $13,200.00.**

The Court finds that this entry is not sufficiently specific as to allow for

meaningful review.  In addition, the Court finds that this entry is duplicative of other time that Plaintiff's counsel has billed reviewing the transcripts associated with the first trial.  Finally, the Court finds that this entry is excessive to the extent that it, together with other entries for the same date range, total an incredible fifty-one and one-half hours over a four day period.  Accordingly, the time will be reduced to twelve hours.

69.   **March 8, 2006 - Subpoenas to all individuals to appear at trial beginning March 13, 2006 - 3 ½ hours @ $275.00 =$962.50.**

The Court finds that this time is excessive and includes time that could have been performed by a non-professional.  Accordingly, the time will be reduced to one hour.

70.   **March 11 -12, 2006 - office conference with [Plaintiff] concerning testimony and use of certain exhibits at trial - 9 ½ hours @ $275.00 = $2,612.50.**

The Court finds that this time is excessive given the specificity with which it is written.  Accordingly, the time will be reduced to eight hours.

71.   **March 13, 2006 - Day 1 of trial - post-trial preparation for next day - 10 hours @ $275.00 = $2,750.00.**

The Court finds that this time is duplicative of the fourteen additional hours billed on March 13, 2006.  Accordingly, the time will be stricken from the submission.

72.   **March 20, 2006 - Testimony of Arthur Erhart, David Snyder and lengthy arguments in regards to admission of documents into evidence and, thereafter, review of daily transcripts and preparation of closing arguments - 13 hours @ $275.00 = $3,575.00.**

The Court finds that this entry is duplicative of a second entry of the same date in Plaintiff's counsel's affidavit.  Accordingly, the time will be stricken from the submission.

73.     **April 17, 2006 - Review of [Plaintiff's] EEOC Complaint of August 22, 1995 dealing with hostile work environment issues - 1 hour @ $275.00 = $275.00.**

The Court finds this entry unnecessary based on its text.  Accordingly, the time will be stricken from the submission.

74.     **April 18, 2006 - another review of Judge Rodriguez's decision in regards to Post-Trial Motions and finding of case law discussing "changing agreements of the parties following jury deliberations" - 3 ½ hours @ $275.00 = $962.50.**

The Court finds another review of this Court's decision unnecessary based on the text of the entry.  Accordingly, the time will be stricken from the submission.

Plaintiff fails to total the hours claimed in her application as required by Local Civ. R. 54.2(a); however, according to the Court's calculation, the total hours claimed are 1,160.  At the rate Plaintiff requested ($275.00), this would be a total of $319,000.00, rather than the $319,223.25 as represented by Plaintiff.  With the adjustments listed above, the substantive hours total 699 and the travel hours total 14.  At the reasonable hourly rate as determined by the Court ($250.00 and $125.00, respectively), the total fee, excluding the time to prepare the fee application, that will be awarded is $176,500.00.

6.      **Fee for preparation of fee application**

Plaintiff submits a certification alleging that counsel expended $12,925.00 in legal fees preparing the fee application.  Plaintiff argues in her reply that Defendant waived objection to this calculation by not raising a specific objection; however, the Court rejects this contention for two reasons.  First, the certification is not included with the

38

certification relating to trial fees, but is attached as an exhibit to Plaintiff's brief.  Second,

Defendant objected to Plaintiff's entire fee application on the grounds that the hours

included were excessive, redundant or otherwise unnecessary.  Based on the analysis

above, the Court finds as follows with respect to each of the following enumerated

paragraphs of Plaintiff's counsel's certification:

1.   **Saturday, April 15, 2006 - beginning of review of 14 boxes of documents from both Erhart trials - 7 ½ hours @ 275.00 = 2,062.50.**

The Court finds that this entry is unnecessary to the extent that based on the text of the entry, it is not clear why counsel would be required to perform such a task.  In addition, the entry is duplicative of an entry dated April 17, 2006.  Accordingly, the time will be stricken from the submission.

2.   **Sunday, April 16, 2006 - further review of all documents and careful review of deposition and trial transcripts from both trials - 9 ½ hours @ $275.00 = $2,612.50.**

The Court finds that this entry is unnecessary to the extent that based on the text of the entry, it is not clear why counsel would be required to perform such a task.  In addition, the entry is duplicative of an entry dated April 17, 2006.  Accordingly, the time will be stricken from the submission.

3.   **April 18, 2006 - dictation and thereafter review of Certification of Counsel Fees and Costs and legal research on the issues of reasonable counsel fees and costs in a fee shifting matter - 8 @ $275.00 = $2,200.00.**

The Court finds that this entry is duplicative of an entry dated April 17, 2006.  Accordingly, the time will be reduced to four hours.

4.   **April 18-19, 2006 - finalization of all certifications, briefs and post-trial motions seeking reasonable counsel fees and costs - 4 ½ hours @ $275.00 = $1,237.50.**

The Court finds that this entry is duplicative of entries dated April 17, 2006

and April 19, 2006.  Accordingly, the time will be stricken from the submission.

5.   **April 19, 2006 - complete review of final draft as prepared by Mr. Press's secretary in his office and travel to Camden to personally deliver Certification with supporting materials. - 5 hours @ $275.00 = $1,375.00.**

This Court finds that this time is excessive to the extent that it includes two hours travel time to drive to Camden to personally deliver Plaintiff's post-trial motions.  Accordingly, the time will be reduced to three hours.

Again, Plaintiff fails to total the hours claimed in her application as required by Local Civ. R. 54.2(a); however, according to the Court's calculation, the total hours claimed are forty-seven.  With the adjustments listed above, the substantive hours total 19.5.  At the reasonable hourly rate as determined by the Court ($250.00), the total fee for preparing the fee application that will be awarded is $4,875.00.

7.   **Costs**

Plaintiff submits a certification alleging costs in the amount of $22,255.78.  Defendant objects to most of the costs.  Based on the objections, the Court finds as follows with respect to each of the following enumerated paragraphs of Plaintiff's counsel's certification:

1.    **CSR Associates deposition transcripts of 5 Erhart Depositions - $860.05, $736.50, $465.95, $734.80 and $687.40 totaling -**                                                    **$2,705.50**

Defendant argues that less than 100 pages of the 1,100-page transcript deal with the hostile work environment claim and submits that th total should be reduced to $270.50.  While Plaintiff maintains that all transcripts have been reduced by half to account for the other issues presented, unlike other depositions transcripts, which reflect a fifty percent reduction, Plaintiff's deposition does not.  Therefore, the Court rejects the contention that this entry has been adjusted.

As stated above, the Plaintiff is not entitled to reimbursement of fees and costs that are not related to successful litigation.  In an effort to ascribe some number to Plaintiff success, the Court must consider not simply the ratio of successful claims to unsuccessful claims, but must consider the pervasiveness of the claims.  At the first trial, Plaintiff alleged claims of race discrimination, retaliation and hostile work environment under Title VII and the NJLAD and a retaliation claim against Andrew Mair.  Without question, the discrimination and retaliation claims were the focus of the trial.  Plaintiff lost each of these claims as to both defendants.  Plaintiff's only successful claim was hostile work environment.  Based on this analysis, the Court finds that those costs that are mixed among all of Plaintiff's claims should be reduced to twenty-five percent.  Accordingly, Plaintiff's deposition will be reduced to $676.38.

2.    **Deposition of James Whelan (divided in half)**                                          **639.65**

James Whelan's deposition relates to all of Plaintiff's claims.  Accordingly, to reflect a reduction to twenty-five percent, it will be reduced to $319.83.

41

3.    **CSR Associates deposition transcript of Karen Upshaw on two separate occasions - 339.80 & 716.25 (divided by half)**                        528.02

    Karen Upshaw's deposition relates to all of Plaintiff's claims. Accordingly, to reflect a reduction to twenty-five percent, it will be reduced to $264.01

4.    **CSR depositions of Andrew Mair on 2 occasions totaling $819.60 and $656.05 (divided by half)**                        737.82

    Andrew Mair was not employed by Defendant during the period when Plaintiff was subjected to a hostile work environment, that is, during her time in Code Enforcement. Accordingly, this cost will be stricken from the submission.

5.    **CSR deposition of Kitty Johnson**                        318.32

    Defendant objects to this entry on the basis of relevance. Plaintiff fails to respond to Defendant's allegation. Accordingly, this cost will be stricken from the submission.

6.    **CSR deposition of Tom Russo**                        228.52

    Defendant objects to this entry on the basis of relevance. Plaintiff fails to respond to Defendant's allegation. Accordingly, this cost will be stricken from the submission.

7.    **CSR deposition of Steve Greenwood**                        732.00

    Steve Greenwod's deposition relates to all of Plaintiff's claims. Moreover, unlike other deposition transcript costs, a reduction of fifty-percent is not noted. Accordingly, this cost will be reduced to $183.00.

8.    **CSR deposition of Norelle-Nance & Gerry Harrigan -**
      **$681.50 (Divided in half)**                                    340.75

      Defendant objects to this entry on the basis of relevance.
      Plaintiff fails to respond to Defendant's allegation.
      Accordingly, this cost will be stricken from the submission.

9.    **CSR deposition transcript of Rick Russo**                      460.00

      Rick Russo's deposition relates to all of Plaintiff's claims.
      Moreover, unlike other deposition transcript costs, a
      reduction of fifty-percent is not noted.  Accordingly, this
      cost will be reduced to $115.00.

10.   **Additional CSR depositions of Karen Upshaw, Benay-**
      **George and Andrew Mair (no costs assessed)**                   948.00

      These depositions relate to all of Plaintiff's claims.
      Moreover, unlike other deposition transcript costs, a
      reduction of fifty-percent is not noted.  Accordingly, this
      cost will be reduced to $237.00.

11.   **KINKO copying and binding charges for Opposition to**
      **Motion for Summary Judgment & Additional Statement**
      **of Material Facts**                                            282.25

      Defendant argues that this entry is not specific enough to
      determine whether is has been reduced to reflect those
      charges only for Plaintiff's opposition.  Plaintiff fails to
      respond to Defendant's argument.  Accordingly, the cost
      will be reduced by twenty-five percent to $70.56.

43

**12.**   **New Jersey Lawyer service Fee for delivery of all**
**transcripts, documents and other related materials to the**
**several Atlantic City counsel who handled this matter**                107.00

Defendant argues that this entry is not specific enough to
determine which transcripts and documents were delivered
and at what time in the litigation.  Plaintiff fails to respond
to Defendant's argument.  Accordingly, the cost will be
stricken from the submission.

**13.**   **Witness fees payments to those witnesses relating to**
**hiring, firing, emotional issues or hostile work**
**environment**                45.00

Defendant argues that this entry is vague because Plaintiff
does not specify the names of the witnesses for which she
seeks reimbursement.  Plaintiff fails to respond to
Defendant's argument.  Accordingly, the cost will be
stricken from the submission.

**14.**   **Sir Speedy copying and bindin for first trial Trial**                155.32
**Brief,motions in Limine, etc.**

Defendant argues that this charge should be adjusted to
reflect Plaintiff's success.  Plaintiff fails to respond to
Defendant's argument.  Accordingly, the cost will be
reduced to $38.83.

**15.**   **Sir Speedy charges in blow-up of all exhibits**                1,149.18

Defendant argues that this entry should be adjusted to reflect
Plaintiff's success because the exhibits related to all claims.
Plaintiff fails to respond to Defendants argument.
Accordingly, the cost will be reduced to $287.30.

16.     **Daily transcripts from first trial paid to Ted Formaroli**     **6,832.95**

Defendant argues that this entry must be reduced to reflect Plaintiff's rate of success.  Plaintiff concedes that such a reduction is appropriate, but argues that fifty percent is appropriate.  As discussed above, the Court finds that Plaintiff's success is twenty-five percent.  Accordingly, the entry will be reduced to $1,708.24.

17.     **Four week stay at the Cherry Hill Hilton for the first trial which saved costs of travel to and from the courthouse on a daily basis**     **2,499.32**

The Court finds that this expense is reasonable to the extent that it relates to the successful claims.  Accordingly, to reflect a reduction to twenty-five percent, it will be reduced to $624.83.

Plaintiff's total for costs is $22,255.78.  With the adjustments listed above, the total costs that will be awarded are $8,071.16.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff's Motion for Additur, or in the alternative, a New Trial [Docket No. 128] will be denied and Plaintiff's application for attorneys' fees will be granted in part and denied in part [Docket No. 128].

An appropriate Order will enter this date.

<u>/s/ JOSEPH H. RODRIGUEZ</u>
JOSEPH H. RODRIGUEZ
United States District Judge

DATED: August 17, 2006